**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION**

| | |
|---|---|
| JESUS PEREZ, Individually, and on Behalf of Himself and All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: _____ |
| vs. ) | |
| ) | **COMPLAINT FOR** |
| BARRIER COMPLIANCE SERVICES, LLC ) | **COLLECTIVE ACTION** |
| ) | |
| Serve: Kirk Alan Kaiser ) | *Electronically Filed* |
| Barrier Compliance Services, LLC ) | |
| 8245 Nieman Rd. ) | |
| Lenexa, Kansas 66214 ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

## INTRODUCTION

1.     Comes Plaintiff, Jesus "Jesse" Perez, individually, and on behalf of himself and all others similarly situated (hereinafter collectively referred to as "Plaintiff"), and for this proposed collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") against Defendant, Barrier Compliance Services, LLC  (hereinafter "Defendant").  Plaintiff and those similarly situated are or were employed by Defendant as non-exempt "field employees" and "field leader" employees and were denied appropriate overtime compensation as required by the FLSA. Specifically, Defendant willfully engaged in the practice of not recording employees' time for all work performed and did not compensate employees with appropriate overtime pay for all work performed for the benefit of Defendant in excess of forty (40) hours in a workweek. These employees are similarly situated under the FLSA, 29 U.S.C. § 216(b).

2.     The proposed FLSA Collective is made up of all "field employees" and "field leaders" and those in travel positions, including but not limited to technicians, repairmen,

inspectors, surveyors, and installers of firestops, dampers, doors, and barriers, and other non-exempt positions with similar job titles and/or duties who work or have worked for Defendant at any time within three (3) years prior to this action's filing date (the "Collective Period").

3.      During the Collective Period, Defendant failed to pay overtime compensation to Plaintiff and each member of the FLSA Collective as required by federal law.  Plaintiff seeks relief for the FLSA Collective under the FLSA to remedy Defendant's failure to pay appropriate overtime compensation.

## PARTIES

4.      Plaintiff, Jesse Perez, is a resident of the Commonwealth of Kentucky and was hired by Defendant as a Kansas employee and paid Kansas state taxes.  Plaintiff was employed by Defendant from March 2, 2017 through March 27, 2019.

5.      Defendant, Barrier Compliance Services, LLC, is a Kansas Limited Liability Company which performs inspections, assessments, construction and installation, design, assistance, and code compliance for healthcare facilities and other facilities across the country. See Defendant's website: https://www.barriercompliance.com/ .  Defendant's principal place of business is located at 8245 Nieman Rd., Lenexa, Kansas 66214.

6.      At all times relevant to this Complaint, Defendant qualified as an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1) and had annual gross volume of business which exceeded $500,000. Defendant regularly engaged in interstate commerce and was an "employer" within the meaning of the FLSA, 29 U.S.C. § 206-207. Defendant employed and required Plaintiff and similarly situated employees to travel to various states across the country to perform work in which they handled, used, and installed equipment and materials which had been moved through interstate commerce.

7.     Defendant may be served with process by service on Kirk Alan Kaiser, 8245 Nieman Rd., Lenexa, Kansas 66214, which is Defendant's registered agent listed with the Kansas Secretary of State.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331 as this action is brought under the FLSA, 29 U.S.C. § 201 et seq.  Plaintiff signed a consent form to join this lawsuit, which is attached as **Exhibit A**.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant operates in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

### DEFENDANT, GENERALLY

10.     Defendant contracts with healthcare facilities, data centers, education centers, commercial facilities, industrial facilities, nuclear facilities, and government facilities, among others across the country to perform inspections, assessments, installation, design assistance, and code compliance for new construction and renovation projects.

11.     Defendant employs technicians, repairmen, inspectors, surveyors, and installers of firestops, dampers, doors, and barriers, generally categorized as "field employees". Defendant also employs "field leaders", which include those with supervisory or managerial responsibilities over "field employee" technicians, repairmen, inspectors, surveyors, and installers.

12.     Defendant assigned Plaintiff and similarly situated employees to perform work at various jobsites around the country for periods of as little as a day to weeks or more at a time. Plaintiff and similarly situated employees did not have a fixed work location.

13.     Defendant classified Plaintiff and those similarly situated as hourly non-exempt employees and were entitled to overtime pay under the FLSA's overtime requirements.

14.     Defendant required Plaintiff and other similarly situated employees employed in the last three (3) years to regularly work more than forty (40) hours in a workweek and did not pay overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked over forty (40) hours during those workweeks.

15.     Defendant issued Plaintiff and similarly situated employees a mobile telephone and required them to maintain it on their person at all times.  Defendant's Cell Phone / Mobile Device Policy set forth in the Barrier Compliance Services Employee Handbook (hereinafter the "Employee Handbook") states in pertinent part, that "Company provided phones are to be powered and connected during ALL working hours … If an employee forgets his phone or the phone is not fully charged, the employee may not begin work and is to be sent home for the day without pay." **Exhibit B, pg. 29**.   Defendant required Plaintiff and similarly situated employees to remain on-call and available at all times, even when "off-the-clock".

16.     Defendant installed an ADP Mobile Solutions "Electronic Timecards" GPS timekeeping application (hereinafter, the "ADP application") on all issued mobile telephones. Defendant's policy regarding "Electronic Timecards" is reflected in the Employee Handbook as:

> If you have been issued a company cell phone, you must clock in at the jobsite at the beginning of each day, using the *ADP Mobile Solutions* app. You do not need to clock out for lunch. The system will automatically deduct 30 minutes for your lunch if you work more than a 5 hour shift. You do not need to clock out for the authorized 15 minute breaks. You must clock out at the end of each shift, prior to leaving the jobsite. Clocking in and out as prescribed is a requirement of the job. As a matter of convenience, you may clock in up to 5 minutes before the scheduled start time but you should not begin work until the actual scheduled start time. Occasional failure to clock in or out can be corrected by emailing Timesheets@BarrierCompanies.com and your Supervisor. Excessive corrections (more than 3 per month) may result in corrective actions.

**Exhibit B, pg. 25**.

17.     Defendant through its unlawful policy and procedure only compensated Plaintiff and similarly situated employees for time physically at an assigned jobsite as verified by GPS coordinates using the ADP application. When Plaintiff and similarly situated employees arrived at an assigned jobsite, they were required to clock in by logging onto the ADP application. Employees were prohibited from clocking in "Electronic Timecards" prior to arriving at a jobsite even if they performed compensable work.

18.     Clocking in or out from a location other than an assigned jobsite, warehouse, or authorized location constituted a violation of Defendant's policy and was considered "Timecard Falsification", even if compensable work was performed on the way to a jobsite, after leaving a jobsite, or at one's hotel. **Exhibit B, pg. 25**.

19.     Data from the ADP application will reflect the hours Defendant permitted Plaintiff and similarly situated employees to log in "Electronic Timecards". Upon information and belief, GPS data captured by company-issued mobile telephones will reflect the hours in which Plaintiff and similarly situated employees worked for the benefit of Defendant without proper compensation as required under the FLSA.

**NAMED PLAINTIFF, JESSE PEREZ**

20.     Defendant employed Plaintiff as a "field employee".  He worked as a fire damper inspector and subsequently as a fire damper repairman.  Plaintiff's job duties and responsibilities included inspecting and repairing fire dampers, which are regulated through building codes.

21.     Defendant required Plaintiff to work at least forty-eight (48) hours per week (generally, 8-10 hours per day, six (6) days per week) when Plaintiff was assigned to a jobsite and refused to pay Plaintiff for all time worked in excess of forty (40) hours per workweek. **Exhibit**

**C, pg. 3**.  Defendant required similarly situated employees to work in excess of forty (40) hours per workweek and did not compensate them for all overtime work performed.

22.     At times, Defendant compensated Plaintiff for overtime work performed when he was physically at a jobsite (again, Plaintiff was regularly scheduled and regularly worked in excess of forty (40) hours per workweek at assigned jobsites).   However, Defendant intentionally and unlawfully refused to compensate Plaintiff for worked performed when he was not physically at an assigned jobsite, including picking up blueprints or materials on the way to or from a jobsite and completing paperwork away from the jobsite.  Because Plaintiff worked in excess of forty (40) hours in nearly every workweek he was assigned to a jobsite, all such work performed away from the assigned jobsite should have been paid at the overtime rate of time and a half.

23.     When Plaintiff was assigned to jobsites in New York, he and similarly situated employees were regularly permitted or required to work at such jobsites in excess of forty (40) hours in a workweek.  Because of New York union restrictions and/or the fact that Plaintiff and similarly situated employees were receiving a higher regular hourly rate of pay for work performed at jobsites in New York, Defendant refused to pay overtime pay.  Defendant regularly adjusted the "Electronic Timecards" for Plaintiff and similarly situated employees to deduct all hours logged and worked over forty (40) hours and did not pay overtime pay for work performed in New York. Plaintiff complained to Defendant about the repeated unlawful deductions of overtime hours and his complaints were ignored.

24.     Defendant on other occasions adjusted Plaintiff's and similarly situated employees' "Electronic Timecards" to deduct hours logged and worked over forty (40) hours and did not pay overtime pay for all such hours worked in excess of forty (40) in a workweek at other jobsites.

25.     While it was Defendant's policy to automatically deduct a thirty (30) minute meal break if an employee was logged in to "Electronic Timecards" for more than five (5) hours, Plaintiff and other similarly situated employees frequently did not enjoy an uninterrupted thirty (30) minute meal break.  Because Plaintiff and similarly situated employees were regularly assigned to and did work in excess of forty (40) hours in a workweek, the illegal thirty (30) minute meal break deducted should have been paid at an overtime rate.

26.     Plaintiff and other similarly situated employees were required to be on-call or make or accept work-related calls for the benefit of Defendant while off-the-clock and without compensation, which would have been performed after more than forty (40) hours of work.

27.     On average, Plaintiff worked a minimum of ten (10) hours of overtime each week that Defendant did not pay him for.  In workweeks in which Plaintiff was required by Defendant to travel to new cities to begin a job assignment or return home, Plaintiff worked a minimum of fifteen (15) to twenty (20) or more hours of overtime (depending on the location of departure and location of arrival), which Defendant did not pay him for.  Defendant likewise failed to pay similarly situated employees for all overtime hours worked.

28.     Plaintiff received a written reprimand from Defendant and was accused of timecard fraud for remaining clocked in after an early morning hospital exit meeting on Monday, February 11, 2019 through the time that he arrived at the Atlanta airport to travel to a new jobsite.  Plaintiff did so to seek compensation for time he spent making work-related calls off-the-clock. **Exhibit D**. The work-related calls were made the prior workweek beginning 02/04/2019 and ending 02/10/2019, in which he logged 57.20 hours in "Electronic Timecards". **Exhibit E**.   Thus, the time spent for calls made while off-the-clock should have been paid at an overtime rate.

**D**EFENDANT'S **U**NLAWFUL **R**EFUSAL TO **P**AY **T**RAVEL **T**IME

29.     One of the "Benefits of Working With US" which Defendant boasts in its Employee Handbook is that "Barrier Compliances Services compensates for all hours worked by law." **Exhibit B, pg. 21**.  However, Defendant admittedly and openly refused to compensate employees "for all hours worked by law".

30.     Defendant refused to compensate Plaintiff and similarly situated employees for travel to and from jobsites across the country.  Jobsites that Defendant required Plaintiff and similarly situated employees to travel to and work in included, but were not limited to, facilities located in: Colorado, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Michigan, Mississippi, Nebraska, New Mexico, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, Washington, and Wisconsin.

31.     Defendant's "Job Travel Policy" for "Travel time" was as follows:

> Employees will travel to the destination city on the night before the scheduled work start date. Travel should occur outside of normal working hours.  Travel time is not paid time, as the employee is not being required to work in another market.

**Exhibit B, pg. 36**.

32.     Plaintiff was almost exclusively assigned to work at jobsites which required travel out of state and away from his home community for the benefit of Defendant and without appropriate pay and overtime compensation. Upon information and belief, similarly situated employees were also primarily assigned to work at jobsites which required travel out of state and away from their home communities for the benefit of Defendant and without appropriate pay and overtime compensation.

33.     Clients of Defendant would contract to have Defendant provide a certain number and skillset of "field employees" and "field leaders" on certain dates at a facility to perform repair,

8

inspection, and/or installation work. Defendant would then assemble a team of employees to perform the contracted work and make travel arrangements for the employees assigned to the job.

34.     Defendant's employees, Nicole Wheeler and/or Katelynn Zuercher, were primarily responsible for scheduling and assigning travel arrangements for Plaintiff and similarly situated employees.  Travel arrangements were typically made based on price, not travel time.  Travel was a mandatory requirement of Plaintiff's job and similarly situated employees' jobs.   Travel primarily occurred during "normal working hours" and often took up an entire workday.

35.     Travel arrangements, including flight details, rental car pickup, and accommodation details were provided to Plaintiff and similarly situated employees via email and generally included the following language: "Our standard practice is employees to travel the night before the job begins and the night after the job ends. Travel is unpaid. However, for your convenience and at your request, we have booked the flights below." **Exhibit F**.

36.     On travel days, Plaintiff often made work-related calls, respond to work-related emails, prepare reports, gather tools and supplies to begin work at a new jobsite, among other compensable activities.

37.     Defendant refused to compensate Plaintiff and similarly situated employees for travel to and from cities across the country where Defendant assigned them to new jobsites, which should have been compensated at an overtime rate.  As an example, for the week beginning 03/18/2019 and ending 03/24/2019, Plaintiff was compensated for 43.32 hours of work, which he was permitted to log into the "Electronic Timecards". **Exhibit G**.  Defendant did not compensate Plaintiff for a travel day during this workweek, which should have been paid at an overtime rate as he already worked in excess of forty (40) hours during the workweek.  Defendant arranged Plaintiff's travel on 03/18/2019 to take a flight from Louisville, Kentucky (approximately three

(3) hours drive from his residence in Campbellsville, Kentucky) at 8:45 a.m. EST and arrive in Albuquerque, New Mexico at 12:28 p.m. MDT.  Travel time from the scheduled departure to scheduled arrival time was five (5) hours and forty-three (43) minutes, which Defendant refused to compensate Plaintiff for as "Travel is unpaid". **Exhibit F**.  As reflected in the travel schedule, Defendant booked Plaintiff a hotel in Las Vegas, New Mexico, which required Plaintiff to make a nearly two (2) hour uncompensated drive from the airport according to Mapquest. **Exhibit H**.

38.     Another example where Defendant refused to pay for travel when Plaintiff worked in excess of forty (40) hours during a workweek occurred in the workweek beginning 09/03/2018 and ending 09/09/2018.  In this week, Defendant compensated Plaintiff for 41.53 hours of work, which he was permitted to log in the "Electronic Timecards". **Exhibit I**.   This time did not include travel from Boston, Massachusetts to Louisville, Kentucky on September 8, 2018.   Defendant scheduled Plaintiff on a flight departing Boston at 11:00 a.m. EST and after a connection, Plaintiff was scheduled to land in Louisville at 3:50 p.m. EST, nearly five (5) hours later. **Exhibit J**. Defendant likewise did not compensate Plaintiff for his travel time to and from the airports or time spent in the airport because of its unlawful policy that travel is unpaid.

39.     As a further example, Plaintiff had two (2) travel days during the week beginning 04/02/2018 and ending 04/08/2018, in which he worked 49.28 hours and was not compensated for his travel time. **Exhibit K**.   Defendant scheduled Plaintiff to depart on a flight from Savannah, Georgia on April 2, 2018 at 7:05 a.m. EST and arrive in Denver, Colorado at 10:45 a.m. MDT, five (5) hours and forty (40) minutes later.   **Exhibit L**.   Then, on April 7, 2018, Defendant scheduled Plaintiff to depart on a flight from Denver, Colorado at 5:55 p.m. MDT and arrive in Seattle, Washington at 7:58 p.m. PDT, over three (3) hours later.  **Exhibit M**.  Defendant likewise

did not compensate Plaintiff for his travel time to and from the airports or time spent in the airport because of its unlawful policy that travel is unpaid.

40.     Defendant also refused to compensate Plaintiff for travel where he was required to drive to a new jobsite city. During the week beginning 09/24/2018 and ending 09/30/2018, Plaintiff worked 49.23 hours and was not compensated for his required drive on September 27, 2018 from New Orleans, Louisiana to Biloxi, Mississippi. **Exhibit N**.  Defendant directed Plaintiff to return the rental car used for his New Orleans job assignment at the New Orleans international airport and pick up a new rental car and drive it to his new job assignment in Biloxi, Mississippi, over one (1) hour and thirty (30) minutes away without overtime compensation.  **Exhibit O**.

41.     Defendant not only refused to pay Plaintiff and similarly situated employees for in-air travel, but also time spent traveling to an airport, dropping off rental cars, going through airport security, collecting baggage, picking up new rental cars, and traveling to hotels.  Travel days could easily exceed ten (10) hours, especially if Plaintiff was required to travel across the country, as he did for example on April 6, 2017 when he flew from Seattle, Washington to Knoxville, Tennessee.

42.     On occasion, Defendant made errors in arranging travel for Plaintiff and similarly situated employees (such as book an employee's travel under the wrong name, book an incorrect flight, or give incorrect hotel location, among other issues), which caused missed flights, employees to have to spend the night in airport terminals, and travel to correct destinations all without appropriate compensation. For example, on one occasion, Defendant booked a flight for Plaintiff using his nickname "Jesse" as opposed to his legal name "Jesus" and he was not permitted to board the flight.  Plaintiff had to remain at the airport until arrangements for a new flight could be made and Defendant refused to compensate him for any of the time he spent for this botched travel assignment.

43.   During Plaintiff's employment, Defendant arranged for Plaintiff's travel to and from jobsites on approximately fifty (50) different occasions.  He was not compensated for his travel time regardless whether he logged less than forty (40) hours on the "Electronic Timecards" during a workweek or more than forty (40) hours.

44.   Plaintiff worked with similarly situated employees at various jobsites who were regularly scheduled by Defendant to work and did work in excess of forty (40) hours during a workweek, required to travel out of state to jobsites, and were not compensated by Defendant for their travel time (which should have been paid at an overtime rate).

## DEFENDANT'S REFUSAL TO PAY OVERTIME FOR COMPENSABLE WORK PERFORMED AWAY FROM JOBSITES

45.   Plaintiff was required to perform compensable work for Defendant while off-the-clock in workweeks where he worked in excess of forty (40) hours and Defendant refused to pay overtime pay for all such work.

46.   On or around March 2018, Defendant's Inspection Manager, Sean McClaran, directed Plaintiff to develop the damper inspector training program and to do so while off-the-clock.  Plaintiff asked when he would be compensated for this work and was told he would "see it on the back end". Plaintiff spent at least twenty (20) hours on this assignment while off-the-clock and was never compensated for his additional work.

47.   Plaintiff was required to be available to accept work-related calls at all hours of the day in workweeks he worked in excess of forty (40) hours, which Defendant refused to compensate him for.  A review of records from Plaintiff's company-issued mobile telephone would reveal the calls Plaintiff was required to accept and make while off-the-clock and the duration of such calls.

48.   On or around June 2018, Plaintiff was assigned to a project in New Orleans and received an off-the-clock call from office manager, Tonda Edwards, directing him to track down

a new employee who failed to report to a jobsite after arriving in New Orleans. Plaintiff spent hours over the course of three (3) days trying to track the individual down and was never compensated.

49.     On or around May 2017, Plaintiff received a call from co-worker, Jake Roe, late in the evening and off the clock to discuss dampers on a project.  That same evening another co-worker, Rick McCombs, called to discuss another project. The following day, Plaintiff informed his supervisor he had work-related calls while off the clock and requested compensation for his time spent on the calls and Defendant refused to compensate Plaintiff for his time.

50.     Plaintiff and similarly situated employees were required to participate in weekly conference calls with Sean McClaran. These calls were generally in the afternoon and lasted about one (1) hour.  Plaintiff and similarly situated employees were not compensated for the weekly work-related conference calls and were required to participate even if they were not scheduled to work, traveling (without compensation), or not at an assigned jobsite.

51.     When Plaintiff and similarly situated employees arrived at a new jobsite, Plaintiff frequently had to pick up and/or make copies of blueprints, wait for and/or pick up other employees, and pick up supplies and equipment to be ready to start a new job assignment.  While this work was for the benefit of Defendant and compensable, Defendant refused to compensate Plaintiff and similarly situated employees for this work.

52.     Plaintiff and similarly situated employees that worked "inspector" roles generally were required to perform additional uncompensated work away from the jobsite on a daily basis because many facilities would not permit them to remain in the facility after hours.  Plaintiff generally spent at least one (1) hour per day off-the-clock marking blueprints with details of completed inspections.   Because Plaintiff generally worked in excess of forty (40) hours in a

workweek, the time spent marking blueprints away from the jobsite should have been compensated at an overtime rate.

53.     Plaintiff and similarly situated employees were engaged to wait and/or required to be on-call for the benefit of Defendant on numerous occasions while off-the-clock for which they were not appropriately compensated as required by the FLSA.

54.     Plaintiff and similarly situated employees were generally assigned to healthcare facility jobsites. At times, accreditation inspectors from The Joint Commission and/or state inspectors initiated unannounced inspections and surveys of the facilities when Plaintiff and similarly situated employees were scheduled to work.  When this occurred, facilities required Plaintiff and similarly situated employees to vacate the premises until the inspection or survey concluded.  Defendant then required Plaintiff and similarly situated employees to remain on-call at the hotel booked by Defendant to wait for instruction to return to the facility.  Defendant would not pay Plaintiff or similarly situated employees for their time, including overtime, when they were required by Defendant to be on-call or engaged to wait.

55.     On or around February 2019, Plaintiff was assigned to work at a jobsite and the facility was not prepared for him to perform work.  Defendant remained on-site for two (2) days waiting to meet with the Director of the facility to discuss the project as directed by Defendant.  It was determined that Plaintiff's assignment at the facility could not proceed and Defendant sent Plaintiff to return home. Not only did Defendant refuse to compensate Plaintiff for his travel time, but it refused to compensate Plaintiff for the two (2) days he was physically at the jobsite and was logged in to "Electronic Timecards".

56.     Because Plaintiff and similarly situated employees were generally scheduled to work in excess of forty (40) hours per workweek, the time spent traveling, making and accepting

14

work-related calls outside of working hours, on conference calls, completing paperwork and daily log reports, and engaged to wait and/or on-call, Plaintiff and similarly situated employees would be entitled to overtime pay for these compensable activities.

57.      The conduct of Defendant, set forth above, has been willful, in bad faith, and has caused significant damages to Plaintiff and similarly situated employees.

## COLLECTIVE ACTION ALLEGATIONS

58.      Plaintiff restates and incorporates each of the foregoing Paragraphs of this Complaint as if each is fully restated herein.

59.      Plaintiff brings this action on behalf of himself and the following proposed collective of similarly situated employees:

> All current and former employees of Defendant who, at any time within three (3) years of the filing of this action, were employed in a non-exempt position that: (a) Defendant required to travel (either interstate or intrastate) to jobsite destinations, and/or were   generally categorized as "field employees" and "field leaders", including but not limited to, technicians, repairmen, inspectors, surveyors, and installers of firestops, dampers, doors, and barriers, and other positions with similar job titles and/or duties, and (b) have not been fully compensated by Defendant for all time worked in excess of forty (40) hours during a given workweek.  (The "FLSA Collective").

60.      Members of the proposed FLSA Collective have been subject to the unlawful practices alleged herein and, therefore, are similarly situated to the named Plaintiff.  Members of the proposed FLSA Collective were employed by Defendant within the meaning of the FLSA, work(ed) in similar jobs, and are(were) subjected to similar unlawful compensation policies and procedures resulting in the denial of overtime pay.  The unlawful conduct perpetrated by Defendant has been widespread, repeated and consistent with respect to proposed FLSA Collective.

61.      Defendant engaged in a pattern or practice of permitting or requiring Plaintiff and the proposed FLSA Collective to perform work in excess of forty (40) hours per workweek,

including while off-the-clock and/or not physically present at an assigned jobsite, all for the benefit of Defendant and without appropriate compensation in violation of the FLSA.

62.     Defendant engaged in a pattern or practice of permitting or requiring Plaintiff and the proposed FLSA Collective to travel for the benefit of Defendant and without appropriate compensation in violation of the FLSA.

63.     Defendant in developing its compensation policies and procedures, including, but not limited to those reflected in the Employee Handbook, knew or should have known Plaintiff and the proposed FLSA Collective were permitted and required to perform work in excess of forty (40) hours per workweek without appropriate compensation in violation of the FLSA.

64.     Defendant willfully engaged in a pattern and practice of unlawful conduct by directing employees not to log time worked for the benefit of Defendant in the "Electronic Timecards" ADP Application at locations other than an assigned jobsite. Defendant is and was aware that Plaintiff and the proposed FLSA Collective worked for the benefit of Defendant outside of the time physically present at an assigned jobsite and refused to pay appropriate compensation and overtime in violation of the FLSA.

65.     Defendant failed to make, keep, and preserve records of all the hours worked by Plaintiff and the proposed FLSA Collective in effort to avoid paying all required compensation under the FLSA.

66.     Defendant's unlawful conduct is widespread, repetitious, and consistent, affecting Plaintiff and the proposed FLSA Collective. Defendant is liable under the FLSA for failing to appropriately compensate Plaintiff and the proposed FLSA Collective.

67.     Defendant's conduct is willful, in bad faith, and caused significant damages to Plaintiff and the proposed FLSA Collective. Plaintiff and the proposed FLSA Collective are

entitled to lost wages and overtime, liquidated damages, attorneys' fees and costs, and other requested relief.

68.    Plaintiff's FLSA claims are maintainable as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiff's consent to join this action is attached hereto as **Exhibit A**.

69.    Notice of this action should be sent to the proposed FLSA Collective. There are numerous similarly situated current and former employees of Defendant who have been denied appropriate compensation in violation of the FLSA, who would benefit from a Court supervised notice of the lawsuit and the opportunity to join the case. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

### CLAIM I – VIOLATION OF FLSA FOR NON-PAYMENT OF OVERTIME – PLAINTIFF AND SIMILARLY SITUATED EMPLOYEES OF THE FLSA COLLECTIVE

70.    Plaintiff, individually, and on behalf of the similarly situated employees in the FLSA Collective re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

71.    The FLSA requires covered employers to pay non-exempt employees no less than one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek. 29 U.S.C. § 207.

72.    Defendant was required under the FLSA to pay Plaintiff and those similarly situated employees in the FLSA Collective for all time worked for the benefit of Defendant in excess of forty (40) hours in a workweek.

73.    Plaintiff and the similarly situated employees in the FLSA Collective are non-exempt covered employees. 29 U.S.C. § 203(e)(1).

74.     Plaintiff and the similarly situated employees in the FLSA Collective have worked more than forty hours (40) per week for Defendant during the applicable time period.

75.     Defendant has not properly compensated Plaintiff or the similarly situated employees in the FLSA Collective for all overtime hours worked as required by the FLSA.

76.     Defendant failed to make a good-faith effort to comply with the FLSA as it relates to the compensation of Plaintiff and the similarly situated employees in the FLSA Collective.

77.     Defendant knew Plaintiff and the similarly situated employees in the FLSA Collective worked overtime without proper compensation, and it willfully failed and refused to pay such wages at the required overtime rates.

78.     Defendant's willful failure and refusal to pay Plaintiff and the similarly situated employees in the FLSA Collective overtime wages for time worked violates the FLSA.

79.     By directing Plaintiff and the FLSA Collective not to clock in and out of "Electronic Timecards" unless physically at an assigned jobsite and by failing to record, report, and/or preserve records of hours worked by Plaintiff and the similarly situated employees in the FLSA Collective, Defendant failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment, in violation of the FLSA, 29 U.S.C. §255(a).

80.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

81.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the similarly situated employees in the FLSA Collective have suffered and will continue to suffer a loss of income and other damages. Plaintiff and the FLSA Collective are entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the FLSA Collective, prays for relief as follows:

A.      Designation of this action as a collective action on behalf of Plaintiff and those similarly situated, and prompt issuance of notice to all those similarly situated apprising them of the pendency of this action, and permitting them to assert timely FLSA claims by filing individual consent forms;

B.      Empanel a jury for the trial of all issues of fact;

C.      Judgment that Plaintiff and the FLSA Collective are non-exempt employees entitled to protection under the FLSA;

D.      Judgment against Defendant for violations of the overtime provisions of the FLSA;

E.      Judgment against Defendant for an amount equal to Plaintiff's and the FLSA Collective's unpaid back wages at the applicable overtime rates;

F.      A finding that Defendant's violations of the FLSA are willful;

G.      An amount equal to Plaintiff's and the FLSA Collective's damages as liquidated damages;

H.      Award (and order Defendant to pay) all costs and expenses of litigation and attorneys' fees incurred prosecuting this action;

I.      An award of any pre- and post-judgment interest;

J.      Leave to amend to add claims under applicable laws; and

For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury of all issues so triable.

Respectfully submitted,

  /s/ *Mark V. Dugan*

**DUGAN SCHLOZMAN LLC**
Mark V. Dugan                     KS Bar # 23897
mark@duganschlozman.com
Heather J. Schlozman          KS Bar # 23869
heather@duganschlozman.com
8826 Santa Fe Drive, Suite 307
Overland Park, KS 66212
Telephone:  (913) 322-3528

**STRAUSE LAW GROUP, PLLC**
Courtney L. Graham, *pro hac vice adm. pending*
Randall S. Strause, *pro hac vice admission pending*
804 Stone Creek Pkwy., Ste. One
Louisville, KY 40223
Telephone: (502) 426-1661
Fax: (502) 426-6772
Email: cgraham@strauselawgroup.com
rstrause@strauselawgroup.com

**Counsel for Plaintiffs**